DECISION AND JUDGMENT ENTRY
Mary Warwick ("Mary") appeals the dismissal of her complaint by the Ross County Court of Common Pleas. She asserts that the trial court erred in dismissing her claim against Ralph Penisten and Dixie Starr ("the purchasers") because they were not bona fide purchasers for value. We disagree because competent, credible evidence supports the trial court's findings that: (1) the purchasers did not know that William Warwick ("William") was married to Mary at the time of the sale and (2) the purchasers paid fair market value for the property. She also asserts that the trial court erred in dismissing her claims against William for admeasurement and assignment of her dower rights because its decision is against the manifest weight of the evidence, contrary to law and against public policy. We disagree because Mary waived any right to dower in her marriage contract. Lastly, Mary asserts that the trial court erred in overruling her motion for a new trial. We do not address this argument because we do not have jurisdiction to consider it. Accordingly, we affirm the judgment of the trial court.
 I.
William and Mary married in 1962 in Montreal, Quebec, Canada. Two days prior to their marriage, the Warwicks signed a "marriage contract." The contract provided that "[t]here shall be no dower, the future wife hereby renouncing to all (sic) dower for herself and for her child or children that may be born of the said intended marriage." At the time of the marriage, neither Mary or William resided in Quebec. Also at that time, William was the beneficiary of a trust created by his grandmother. The trust held title to a one-hundred ninety-seven acre farm in Ross County, Ohio. After William's father died, William inherited the farm pursuant to the terms of the trust. The Warwicks visited the Chillicothe area twice to visit the farm. On the second visit, in 1979, they met with Attorney Joseph Kear to discuss selling the property.
In the summer of 1980 or 1981, the Warwicks visited Ross County for a third time and met Penisten, who was the tenant farmer on William's property. This was the only contact Penisten had with Mary until after the sale at issue.
In 1982 or 1983, William sold his property for three hundred twenty five thousand dollars. He gave Mary ninety-five thousand dollars of the proceeds. The trial court found that this payment was not intended as payment for any dower interest in the property. In 1983, Rear's secretary deeded an approximately two acre tract in this property to William. Rear referred to this transaction as a "straw man" deed.
In 1992, Mary separated from William and filed for a division of marital property and an order of spousal support in Ontario, Canada. At that time, the approximately two acre tract was the only real property owned by either of the Warwicks. The Canadian court issued an entry that provided, in part: "THIS COURT ORDERS AND ADJUDGES that the personal property of the parties had been divided by them to their mutual satisfaction and that such division shall compromise full and final equalization of the net family properties, of the parties."
In 1993, William conveyed the approximately two acre tract to the purchasers by a deed wherein he was identified as single. The purchasers paid seven thousand four hundred dollars for the property. Mary was unaware of the sale until after it was completed.
In 1995, Mary filed an action against William and the purchasers seeking admeasurement and assignment of her dower and the cash value of her dower rights in the approximately two acre tract. The purchasers filed a cross-claim against William. At trial Mary, William, and their son, John Warwick, testified. As of the date of the trial, the Warwicks remained married.
After Mary finished presenting her case, both William and the purchasers moved for a Civ.R. 41 (B) (2) dismissal. The trial court granted the purchasers' motion but denied William's motion. At that point, the purchasers dismissed their cross-claim against William. Ultimately, the trial court found in favor of William. In so doing, the trial court determined that neither the marriage contract or the Canadian court order apply to the Ross County property because the issue of dower is governed by laws of the jurisdiction where the property is located. Through an application of Ohio law, the trial court determined that Mary has no right to an admeasurement, to an assignment of her dower, or to any other compensation for the dower. The trial court further found that the purchasers were bona fide purchasers for value. Accordingly, the trial court dismissed Mary's claims against all defendants.
Mary appealed. Upon her request, we stayed the appeal and remanded this case to the trial court for consideration of her Civ.R. 60 (B) motion. In the Civ.R. 60 (B) motion, she asserted that she was entitled to relief from judgment because she had newly discovered evidence. The trial court denied the motion. Mary did not file a notice of appeal from the denial of the Civ.R. 60 (B) motion, seek leave to amend her original notice of appeal, or attempt to have the record of the Civ.R. 60 (B) proceedings transmitted to this court. We reinstated this appeal after the trial court denied Mary's motion. Mary asserts the following assignments of error:
 I. THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR DISMISSAL OF THE PENNISTEN (SIC)/STARR DEFENDANTS AND ITS FINDING THAT THEY WERE BONA FIDE PURCHASERS
 1.) THE TRIAL COURT ERRED IN HOLDING THAT THE $7400.00 PURCHASE PRICE WAS FAIR MARKET VALUE
 2.) THE TRIAL COURT ERRED IN HOLDING THAT THE DEFENDANTS PENNISTEN (SIC) AND STARR WHERE (SIC) WITHOUT KNOWLEDGE OR IMPLIED KNOWLEDGE.
 II. THE TRIAL COURT ERRED IN DISMISSING THE PLAINTIFF'S COMPLAINT AND IN ITS HOLDING THAT THE PLAINTIFF IS NOT ENTITLED TO THE RELIEF FOR WHICH SHE SEERS
 1.) THE TRIAL COURT ERRED IN APPLYING THE SHORT v. CONN
CASE TO THE FACTS BEFORE THE COURT IN THE MATTER AT HAND.
 2.) THE COURTS (SIC) DISMISSAL OF THE PLAINTIFF'S COMPLAINT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, CONTRARY TO LAW, AND AGAINST PUBLIC POLICY.
 III. THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR A NEW TRIAL.
 II.
In her first and part of her second assignment of error, Mary argues that the trial court erred by granting the purchasers' motion to dismiss because she presented a prima facie case that the purchasers paid less than the property's true value and had knowledge sufficient to question William's representation that he was single.
A Civ.R. 41 (B) (2) dismissal is used in non-jury actions and requires the trial court and reviewing court to apply different tests. Central Motors Corp. v. Pepper Pike (1979), 63 Ohio App.2d 34,48. Civ.R. 41 (B) (2) provides:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52 if requested to do so by any party. (Emphasis added).
Thus, the rule specifically provides that the trial court may consider both the law and the facts. Under the rule, the trial judge, as trier of fact, does not view the evidence in a light most favorable to the plaintiff, but instead actually determines whether the plaintiff has proven the necessary facts by a preponderance of the evidence. L.W. Shoemaker, M.D., Inc. v.Connor (1992), 81 Ohio App.3d 748; Harris v. Cinncinnati (1992),79 Ohio App.3d 163; Central Motors Corp., supra. Because the trial court is not required to view the evidence in the light most favorable to the plaintiff, even if the plaintiff has presented a prima facie case, dismissal may still be appropriate. Thus, where the trial court weighs the evidence and determines that the evidence makes it clear that the plaintiff will not prevail; the motion may be granted. See Fenley v. Athens CountyGenealogical Chapter (May 28, 1998), Athens App. No. 97CA36, unreported, citing 3B Moore, Federal Practice (1990), Paragraph 41.13 (4), at 41-177. However, if, in weighing the evidence, the trial judge finds that the plaintiff has proven the relevant facts by the necessary quantum of proof, the motion must be denied and the defendant required to put on evidence. CentralMotors Corp. at 49; Fenley.
On appellate review, to the extent that the trial court's determination rests on findings of fact, we must not disturb the findings unless they are against the manifest weight of the evidence. Fenley. We will not reverse a finding of fact as against the manifest weight of the evidence if the trial court's finding is supported by some competent, credible evidence.Security Pacific Natl. Bank v. Roulette (1986), 24 Ohio St.3d 17,20. However, application of legal standards to such findings are reviewable de novo as mixed questions of law and fact. Shoemaker;Fenley at 6, citing 3B Moore, Federal Practice (1990), Paragraph 41.13 (1), at 41-166.
Mary asserts that the trial court erroneously made the following findings of fact: (1) the purchasers paid fair market value for the approximately two acre tract and (2) the purchasers had no notice that William was married.
We first examine the trial court's finding that the purchasers paid fair market value for the approximately two acre tract. The purchasers paid seven thousand four hundred dollars for the property. John E. Lloyd appraised the property and valued it at eight thousand dollars. He opined that the highest and best use of the property would be residential. Lloyd's appraisal constitutes competent, credible evidence that the purchasers paid fair market value for the property.
We next examine the trial court's finding that the purchasers had no knowledge that William was married at the time of the sale. William was listed as single on the deed. However, Mary and her son testified that she was once introduced to Penisten as William's wife at least ten years before the sale. The fact that William represented himself as single and the only opportunity for the purchasers to have learned otherwise happened at least ten years prior is competent, credible evidence to support the trial court's finding that the purchasers did not know that William was married at the time of the sale.
Thus, neither finding is against the manifest weight of the evidence and the trial court did not err in dismissing with prejudice Mary's claim against the purchasers. Accordingly, we overrule her first assignment of error and that part of her second assignment of error dealing with the trial court's dismissal of Mary's claim against the purchasers.
 III.
In the remainder of her second assignment of error, Mary argues that the trial court erred in dismissing her claims against William. She asserts that the trial court erred by: (1) applyingShort v. Conn (Jan. 25, 1994), Jackson App. No. 93CA709, unreported to this case, (2) issuing a holding that is contrary to public policy, and (3) issuing a holding that is contrary to law. The trial court dismissed her complaint after the court trial because she was not entitled to either an admeasurement or assignment of dower because William is alive and the Warwicks are still married. In so deciding, the trial court determined that the marriage contract did not apply to the property because the issue of dower is governed by the law of the site of the property, i.e., the lex rei sitae. We find that the trial court correctly determined that Ohio law applies to the property situated in Ohio.
However, the marriage contract is not irrelevant simply because Ohio law applies. Rather, the marriage contract must comport with Ohio law to effectively waive dower. See, Kyle v. Kyle (1961),128 So.2d 427 (an antenuptial agreement signed in Quebec, Canada, which provided "there shall be no dower" must comply with Florida law to effectively waive dower to Florida property). Under both Ohio and Canadian law, a woman may waive her dower rights through a valid agreement. Mintier v. Mintier (1876), 28 Ohio St. 307;Grogan v. Garrison (1875), 27 Ohio St. 50; Quebec Civil Code, Section 1431[1]; see, also, Kajtar v. Kajtar (1992, Ontario Gen. Div.), 95 D.L.R.4th 525. In her pre-trial briefs and written arguments to the trial court, Mary asserted that the French-Canadian definition of dower is different than that commonly used in the United States. However, she provided no legal support for that conclusion. To the contrary, our research indicates that although dower has several meanings in the civil code of Quebec, the only meaning that can reasonably be given to the marriage contract is that of "customary dower," which is similar to the American definition. See, also, Henri Turgeon,Matrimonial Property Law in the Province of Quebec, in Matrimonial Property Law 139, 161 (Wolfgang Friedmann ed., 1955) ("Dower is the right of survivorship that belongs to the wife and the children. It is of two kinds, customary and prefixed. Customary dower is that imposed by the law, and consists in the usufruct for the wife of half the immovable property of the husband. Prefixed dower is conventional, and may consist in any agreement * * * .") The only difference between Ohio and French-Canadian dower is the size of the interest the wife receives. The interest in the property is identical.
"But it is lawful to stipulate that there shall be no dower, and such a stipulation binds the children as well as the mother.
The other types of dower, prefix or conventional, are created by a marriage contract. Since the Warwicks' marriage contract did not create a right to dower, the only type of dower that Mary could have waived was the customary dower.
Mary has never argued that the marriage contract was void in any way. Therefore, we find that Mary waived her right to all dower in William's property, including the approximately two acre tract, by executing the marriage contract. Accordingly, the trial court did not err in finding that she was not entitled to the relief she sought and in dismissing her complaint with prejudice. We overrule the portion of her second assignment of error dealing with the trial court's dismissal of Mary's claims against William.
 IV.
In her third assignment of error, Mary asserts that the trial court erred by refusing to grant her motion for a new trial. Although she refers to a motion for new trial in her assignment of error, in her argument, she only discusses the trial court's denial of her motion for relief from judgment that she filed while her appeal of the dismissal was pending. We stayed Mary's appeal after she filed a Civ.R. 60 (B) motion for relief from judgment.
Mary's only notice of appeal provides that she appealed from the December 29, 1997 entry of the trial court. That entry deals only with the dismissal of Mary's complaint. She never sought to amend her notice of appeal to include the denial of her Civ.R. 60 (B) motion. Accordingly, we do not have jurisdiction to consider an appeal of her motion for relief from judgment. See, Trowbridgev. Bd. of Commissioners for Scioto Cty. (Dec. 1, 1998), Scioto App. No. 97CA2527, unreported (no jurisdiction to consider appeal pursuant to R.C. Chapter 5563, when notice of appeal states that appeal is taken pursuant to R.C. 2505.01 and R.C. 2506.01)
Further, the record was transmitted before appellant filed her Civ.R. 60 (B) motion. She never sought to supplement the record with any of the filings regarding her motion, including the trial court's decision on the motion. The appellant bears the burden of showing error by reference to the record. State v. Prince (1991),71 Ohio App.3d 694, 698-699. Without a record, we must presume that the judgment and proceedings below were valid and affirm the judgment. Id.
Accordingly, we overrule her third assignment of error because we do not have jurisdiction to consider it.
 V.
In sum, we overrule all of Mary's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
[1] This section provides: "If there be no contract of marriage, or if in that which has been made the parties have not explained their intentions on the subject, customary dower accrues by the sole operation of law.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Evans, J. and Harsha, J.: Concur in Judgment and Opinion.
For the Court
 BY: _________________________ Roger L. Kline, Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.